Filed 2/18/26

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| ADAM FLAREAU, | |
| Petitioner, | E085722 |
| v. | (Super. Ct. No. INF2300204) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Kristi Hester, Judge. Petition granted with directions.

Steven L. Harmon, Riverside County Public Defender, and Joseph J. Martinez, Deputy Public Defender, for Petitioner.

Michael A. Hestrin, District Attorney, Laura Watts, and Jesse Male, Deputy District Attorney, for Real Party in Interest.

No appearance for Respondent.

1

I.

INTRODUCTION

Penal Code section 1001.36[1] created a program of pretrial diversion for certain criminal defendants diagnosed with mental health disorders. To be granted diversion, the trial court must find that the defendant is both "eligible" and "suitable" for a diversion program. (*Id.*, subds. (b) & (c).) But, even if the trial court finds the defendant is eligible and suitable for diversion, the trial court still has "residual" discretion to deny diversion. (*Id.*, subd. (a).)

The People charged petitioner, Adam Flareau, with various offenses arising from an altercation he had with his sister. In response, Flareau filed a motion for a mental health diversion (§ 1001.36), which the trial court denied.

Flareau now petitions this court for a writ of mandate directing the trial court to vacate its order denying his motion for mental health diversion and reconsider his request under his understanding of the appropriate legal standards. In Flareau's petition, he argues the trial court erroneously found that he was not eligible for diversion and denied his request for diversion on that basis alone. In an informal response to the petition, real party in interest, the District Attorney for the County of Riverside first argues this case belongs in the Appellate Division of the Riverside Superior Court. The District Attorney next argues that the trial court found that Flareau was eligible for diversion, "potentially," but at best "implicit[ly]" found that he was not suitable for diversion, but nonetheless

---

[1] All further statutory references are to the Penal Code.

properly exercised its residual discretion to deny his motion for diversion. In response, Flareau argues for the first time that the trial court inappropriately exercised its residual discretion while reiterating his position that the trial court denied his motion on eligibility grounds while making no suitability finding.

We first reject the District Attorney's argument that this appeal belongs in the Appellate Division. We then conclude that the trial court abused its "residual" discretion by denying Flareau's motion for diversion. We therefore grant Flareau's writ petition and direct the trial court to vacate its order denying Flareau's motion for diversion and hold a new hearing on the motion.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Flareau was living with his parents and sister, Mikaylah Flareau, when he got into an argument with her. Flareau tried to forcibly remove Mikaylah from the house, but she resisted and continued arguing with him. Flareau told her, "'You need to leave me alone or I am going to shoot you.'" Mikaylah and Flareau then separated.

The next day, Mikaylah came home and overheard Flareau say something to their mother about a gun, which prompted another argument between Flareau and Mikaylah. At some point during the argument, Mikaylah told Flareau to "'just shoot [her.'" Flareau then went to the garage and came back with a gun,[2] pointed it at Mikaylah, and demanded that she leave. Mikaylah told Flareau to stop and to leave her alone, but

---

[2] Mikaylah "was not convinced" that the gun worked.

Flareau continued to point the gun at her while telling her to leave. Mikaylah turned to walk away, and Flareau slapped her in the back of the head with his hand while holding the gun in his other hand. The two kept arguing. Flareau kept telling Mikaylah to leave the house while pointing the gun at her, yet she continued to refuse.

Flareau went to his bedroom and returned to the living room, where Mikaylah was, while holding a taser. Flareau pointed the taser at Mikaylah and again told her to leave while following her closely as she tried to leave. Flareau pressed the taser ignition button several times, causing it to perform a "dry stun." Flareau continued following Mikaylah around the house demanding that she leave while "dry stunning" the taser. Mikaylah then grabbed a few things and left.

The Riverside County District Attorney filed a felony complaint against Flareau, charging him with four offenses: (1) assault with a semiautomatic firearm (§ 245, subd. (b); count 1); (2) making criminal threats (§§ 422, subd. (b), 12022.5, subd. (a), 12022.53, subd. (b); count 2); (3) assault with personal use of a deadly or dangerous weapon (a taser) (§§ 245, subd. (a)(1), 12022, subd. (b)(1); count 3); and (4) misdemeanor battery (§ 242). Counts 1 and 2 alleged that Flareau personally used a firearm in the commission of the offenses. (§§ 12022.5, subd. (a), 12022.53, subd. (b).)

Before the preliminary hearing, Flareau moved for pretrial diversion for mentally disordered offenders under section 1001.36. The trial court found Flareau made a prima facie showing that he qualified for diversion. At Flareau's request, the court then set the

4

matter for a formal hearing on whether to grant him mental health diversion. The People opposed Flareau's request for diversion.

As part of Flareau's request for a formal hearing, he submitted a report by clinical psychologist, Dr. Melanie Murua, stating that she diagnosed Flareau with "unspecified mood affective disorder." Dr. Murua noted that Flareau's treating psychiatrist, Dr. Allen Drucker, had diagnosed him with major depressive disorder, dysthymia, panic disorder with agoraphobia, and obsessive compulsive disorder. At the time of the incident with Mikaylah, Flareau was under Dr. Drucker's treatment and was taking medication for depression and anxiety. Dr. Murua concluded that Flareau's mental disorder contributed to his behavior underlying his charges and that his symptoms motivating his criminal behavior would respond to mental health treatment. Specifically, Dr. Murua opined that Flareau would benefit from individual psychotherapy, which he had never received.

Flareau also submitted a letter from Dr. Drucker. Like Dr. Murua, Dr. Drucker believed that Flareau's mental health disorders contributed to his behavior underlying his charges. And, like Dr. Murua, Dr. Drucker believed that Flareau would benefit from psychotherapy, which he had never received. Dr. Drucker confirmed that he had only treated Flareau with psychiatric medication.

Both Dr. Murua and Dr. Drucker noted that Flareau is gay, but not openly so with his parents due to his concern that they would "disown him" if they found out. Flareau was thus "living in fear" that his "very conservative" parents would learn that he is gay.

5

According to Dr. Drucker, Flareau reported that Mikaylah "antagonize[d] him by making homophobic statements" and threatening to "out" him to their parents. Flareau claimed that Mikaylah did so the day before their altercation occurred when they argued at the home. This, in Dr. Drucker's view, put Flareau in "an acute state of anxiety and panic," because he believed Mikaylah telling his parents that he is gay would result in them disowning him and kicking him out, leaving him homeless. According to Dr. Drucker, "[t]his state of desperation overwhelmed Flareau's capacity for rational thinking . . . [and] contributed to his threats against his sister." In short, Dr. Drucker believed that Flareau's mental disorders "were significant causal and contributing factors" to his altercation with Mikaylah.

After hearing argument from the parties, the trial court began its ruling by recapping an off-the-record, in-chambers discussion the court previously had with the parties. The court explained that the discussion was about Flareau's concerns about his sexuality being revealed to his parents because of this case and that the court was considering it only because it was relevant to the case.

In the court's view, there was a "nexus between [Flareau's] conduct and [his] various mental health diagnoses," but his "response in this situation was not solely because of [those] diagnoses." Instead, the court found that Flareau responded the way he did "*also* out of fear and concern that his sister would tell his secret." (Italics added.) After discussing the problems between Flareau and Mikaylah outlined in Dr. Drucker's letter, the court ultimately found that there was "clear and convincing evidence to

indicate that this incident had more to do with his sister antagonizing him with the threats to out him to his parents," although "his response to those threats was most certainly linked to the impulsiveness that may be related to his diagnosis as discussed by Dr. Murua."

The trial court then discussed the intent behind section 1001.36 and mental health diversion: "[T]he idea is there are individuals that commit offenses because of their mental health issues . . . [a]nd the idea is if we can treat those underlying mental health issues, we are not going to see those people in and out of the criminal justice system." The court noted that Flareau had been "receiving mental health treatment for years prior to this incident happening" and that it was only medication, but found that "there is nowhere that says it has to be treatment and medication."

After distinguishing *People v. Sarmiento* (2024) 98 Cal.App.5th 882 (*Sarmiento*), as inapplicable, the court returned to the fact that Flareau had been receiving psychiatric treatment "for years prior to this incident." The court noted Flareau had no other criminal history, which led the court to query, "if his conduct is really because of his mental health issues, wouldn't we have seen him getting into other trouble?" "The difference," according to the court, was "this threat from [Flareau's] sister to out him" and his "very real fear and very real concern" that she would do so.

For this reason, the court found that Flareau did not "truly fall[] under the spirit of what is intended by [section] 1001.36." The court reasoned that "the spirit of [it]" is that mental health treatment can keep "people from coming in and out of" the criminal justice

7

system, and Flareau's "case and circumstances" do not "fall under what was intended by [section] 1001.36" because he was in mental health treatment and compliant with that treatment at the time of his alleged offenses. Because the court found that Flareau did not "fall[] within the spirit of [section] 1001.36," the court denied his request for diversion.

Flareau timely filed a petition for a writ of mandate in this court. After inviting response to the petition from the superior court and the People, the Riverside County District Attorney filed an informal response. We then issued an order to show cause and invited the parties to file additional briefs, but the District Attorney elected to stand on his informal response and not file anything further. Flareau filed a traverse to the informal response.

III.

DISCUSSION

A. *Appellate Jurisdiction*

We first reject the District Attorney's argument that we lack jurisdiction over Flareau's petition, which the District Attorney claims belongs in the Appellate Division. To support his position, the District Attorney relies entirely on *People v. Nickerson* (2005) 128 Cal.App.4th 33, which held that a "'defendant is not "charged with a felony" within the meaning of section 691 until an information or indictment is filed or a complaint is certified to the superior court pursuant to section 849a.'" Because none of these options has occurred here—Flareau was only charged by a felony complaint—the District Attorney maintains this is a "'misdemeanor case'" that belongs in the Appellate Division.

We disagree. *People v. Nickerson* involved an *appeal* of a misdemeanor conviction and judgment, not a writ petition. (*People v. Nickerson*, *supra*, 128 Cal.App.4th at p. 36.) It is thus inapplicable here.

Courts of Appeal have "original jurisdiction over petitions for writ of mandate." (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177, citing Cal. Const., art. VI, § 10.) We therefore have discretion to review any petition for a writ of mandate properly filed in our court, including Flareau's. (See *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 11; see also Cal. Rules of Court rule 8.486(a)(1) ["If the petition could have been filed first in a lower court, it must explain why the reviewing court should

9

issue the writ as an original matter."].)  We are unaware of any authority that supports the District Attorney's position that we lack jurisdiction here.

B.  *Overview of Mental Health Diversion Process and Standard of Review*

Diversion allows the trial court to suspend criminal proceedings and potentially dismiss the charges if the defendant successfully completes mental health treatment. (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 890.)  To grant diversion, the trial court must find that the defendant is both eligible for diversion and suitable for a mental health program. (*Id.* at p. 891.)  "Defendants are eligible if they have been diagnosed with a recognized mental disorder that was a significant factor in the commission of the criminal offense with which they are charged."  (*Id*. at p. 892.)  The trial court "shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

A defendant is suitable for diversion if "(1) in the opinion of a qualified mental health expert, the defendant's mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; *and* (4) the defendant will not pose an 'unreasonable risk of danger to public safety'" as defined.  (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 892, italics added.)

10

But, even if the trial court finds that a defendant is eligible and suitable for diversion, the court retains discretion to deny diversion. (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 892.) This has been deemed "residual discretion." (*Ibid*.)

In general, we review a trial court's ruling on a request for mental health diversion for an abuse of discretion and review its factual findings for substantial evidence. (*Gomez v. Superior Court*, *supra*, 113 Cal.App.5th at p. 686; *Lacour*, *supra*, 110 Cal.App.5th at p. 401.)

More specifically, when reviewing the trial court's eligibility finding, we determine whether there is "substantial evidence from which a reasonable factfinder could have found it highly probable that [the defendant's] mental disorder 'was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.'" (*Lacour*, *supra*, 110 Cal.App.5th at p. 402.) Similarly, when reviewing the trial court's suitability finding, we must determine whether substantial evidence supports the trial court's findings concerning the four suitability factors. (*Id*. at pp. 400-401; § 1001.36, subd. (c)(1)-(3).)

But when reviewing the trial court's exercise of its residual discretion, we apply the abuse-of-discretion standard. (*Lacour*, *supra*, 110 Cal.App.5th at p. 401.) That standard directs us to determine whether the court made a decision that is "'so irrational or arbitrary that no reasonable person could agree with it,'" or made "an arbitrary or capricious decision by applying the wrong legal standard,'" or based its decision on factual findings not supported by substantial evidence. (*Ibid*.)

11

C. *Analysis*

We first accept the District Attorney's concession that the trial court found Flareau eligible for diversion.[3] And although it appears the trial court made no suitability finding, we agree with the parties that the trial court denied Flareau's motion for diversion under its residual discretion. We conclude that was an abuse of discretion.[4]

When exercising its residual discretion, the trial court must do so consistent with the principles and purposes of the mental health diversion program. (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 892.) The purposes include promoting "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety," and to "provid[e] diversion that

_____

[3] Flareau's principal argument in his petition is that the trial court erroneously found he was not eligible for diversion. In fact, Flareau did not argue in his petition that the trial court denied his petition under its residual discretion. The District Attorney, for his part, claimed the trial court found Flareau was eligible for diversion, but nonetheless denied diversion under its residual discretion. In response, Flareau argued for the first time that the trial court improperly exercised its residual discretion. The parties' apparent confusion over the trial court's findings is understandable because the basis for the trial court's order is not entirely clear. For one thing, the court did not expressly state whether it found Flareau eligible or suitable (or not) for diversion, nor did it state it was denying his motion under its residual discretion. It is also unclear whether the court found Flareau eligible for diversion since the court found there was "a nexus between the conduct and the various mental health diagnoses," which suggests the court found him eligible. On the other hand, the court also found there was "clear and convincing evidence to indicate that this incident had more to do with [Flareau]'s sister antagonizing him with the threats to out him to his parents," which suggests the court found he was not eligible for diversion.

[4] We note that the District Attorney did not challenge this conclusion at oral argument, and instead focused his argument exclusively on whether we have jurisdiction here.

meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subd. (a) & (c).) There is thus "a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community." (*Sarmiento*, *supra*, 98 Cal.App.5th at pp. 892-893.) In fact, "the Legislature intended the mental health diversion program to apply as broadly as possible" when the statutory requirements are met. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*).) For that reason, "[a] trial court's denial of mental health diversion using its residual discretion should be limited to those situations where the purposes of the statute would not be achieved." (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 138.) When the court denies diversion under its residual discretion, "its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals." (*Sarmiento*, *supra*, at p. 893.)

The trial court appropriately recognized the intent and purposes of the mental health diversion program and noted that the Legislature intended for the program "to include as many people . . . as possible." But the trial court ultimately concluded Flareau did not fall within the spirit and intent of the program because he had been in mental health treatment for years and compliant with it when he committed the alleged offenses. The court reasoned that this, coupled with the fact that he had no other criminal history, showed that his mental health issues did not cause his altercation with his sister, so the intent behind section 1001.36—"if we can treat these underlying mental health issues, we

13

can keep these people from coming in and out of . . . the criminal justice system"—would not be furthered by granting Flareau diversion.

We discern several problems with this analysis.

First, Drs. Drucker and Murua opined that Flareau would benefit from psychotherapy, which he had never received before, in addition to medication. The trial court discounted their opinions on the ground that "there is nowhere that says it has to be [psychotherapy] treatment and medication." But the primary purpose of section 1001.36 is to get defendants the mental health help that they need to reap "the benefits of such treatment to both the offending individual and the community." (*Sarmiento*, *supra*, 98 Cal.App.5th at pp. 892-893.) Denying diversion because the defendant had possibly not benefited from receiving some, but not all the mental health treatment he needed does not advance that legislative goal. Ordering Flareau to participate in both kinds of mental health services "goes hand in hand with the stated purpose of the mental health diversion statute as set forth in section 1001.35—to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety. (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1149.)

Second, as the District Attorney concedes, the trial court found that Flareau committed the alleged offenses at least in part because of his mental health issues while making no clear suitability findings and turning instead to its residual discretion. Again, "[t]he stated purpose of [the mental health diversion program] is to keep people with mental disorders from entering and reentering the criminal justice system while

14

protecting public safety." (*Whitmill, supra*, 86 Cal.App.5th at p. 1149.) When denying diversion under its residual discretion, the court's ruling did not "explain why diversion would not meet [the] goals" of the diversion program. (See *Sarmiento, supra*, 98 Cal.App.5th at p. 893.) The District Attorney notably makes no attempt to explain how the trial court's ruling advances the program's goals or the Legislature's underlying intent.

Third, and most importantly, the trial court denied diversion primarily because it found that Flareau's behavior had "more to do with" his sister's threats. This, in the court's view, showed that Flareau did not fall within the spirit of mental health diversion program. But section 1001.36 provides that a defendant is eligible for diversion, and thus should be granted diversion, if suitable, so long as the defendant's qualifying mental disorder (see § 1001.36, subd. (b)(1)) was a "motivating factor, causal factor, or contributing factor." (*Id*., subd. (b)(2).) Here, there is no dispute that Flareau's mental health disorder was such a factor. Yet, the trial court found Flareau's case did not "fall under what was intended by [section] 1001.36" because there was another factor (his sister's threats) that was *more* of a motivating, causal, or contributing factor.

We discern no statutory basis for this distinction. Again, "the Legislature intended the mental health diversion program to apply as broadly as possible" (*Whitmill, supra*, 86 Cal.App.5th at p. 1149), and dictated that a defendant is eligible for diversion if their qualifying mental health disorder was a motivating, causal, or contributing factor to their commission of the alleged offense. (§ 1001.36, subd. (b); *Lacour, supra*, 110

15

Cal.App.5th at p. 402.) Nothing in section 1001.36 (or elsewhere) suggests that an otherwise qualifying defendant can be denied diversion under the court's residual discretion if something else was *more* of a motivating, causal, or contributing factor. The trial court did not state, the District Attorney does not explain, and we cannot see how the court's ruling applies section 1001.36 as broadly as possible or "why diversion [for Flareau] would not meet [the] goals" of the diversion program. (See *Sarmiento*, *supra*, 98 Cal.App.5th at p. 893.)

For these reasons, we conclude the trial court misapplied the law and, in doing so, abused its residual discretion. (See *Vaughn v. Superior Court*, *supra*, 105 Cal.App.5th at p. 140.) We therefore grant Flareau's petition.

In his petition, Flareau asks for an order from this court directing the trial court to vacate its order denying his motion for a mental health diversion and to hold "a formal mental health diversion in his hearing to consider [his] suitability and the legislative goals of mental health diversion." In his traverse, however, Flareau asks us to direct the trial court to vacate its order and "remand with directions to grant diversion or, at minimum, to reconsider the motion for diversion under the proper legal standard." Given the uncertainty in the record as to the trial court's findings (see *supra*, fn. 3) and the fact that Flareau initially asked only for a remand with further proceedings, we conclude that is the appropriate remedy.

IV.

DISPOSITION

The petition is granted.  A peremptory writ of mandate shall issue directing respondent superior court to vacate its order denying Flareau's motion for mental health diversion.  The matter is remanded to the respondent superior court with directions to hold a new hearing on Flareau's motion for a mental health diversion consistent with this opinion.

CERTIFIED FOR PUBLICATION

CODRINGTON<br>J.

We concur:

McKINSTER<br>Acting P. J.

MILLER<br>J.